UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| John Ballard | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17 CV 50106 |
| | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting Commissioner of Social Security,[1] | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a Social Security disability appeal. Plaintiff's primary impairment is back and neck pain stemming from a forklift accident in the early 1990s. Plaintiff alleges that he cannot work now because of severe pain, numbness, and dizziness. He claims that his current condition was caused by the long ago accident, but that his problems have worsened in the last few years. The administrative law judge ("ALJ") concluded that plaintiff's allegations were not credible for a number of reasons, including inconsistencies in his testimony and the objective medical evidence showing that his problems were mild. Plaintiff's main argument for a remand is that the ALJ engaged in improper cherrypicking and doctor playing by failing to acknowledge that plaintiff had tried numerous unsuccessful treatments. Plaintiff's second argument is that the Appeals Council erred in rejecting a medical opinion from plaintiff's treating physician. The Court finds that a remand is required based on the first argument.

### BACKGROUND

Plaintiff states that he was hit by forklift in 1991, and later had two neck fusion surgeries (one in 1995 and one in 1996) to correct the problem caused by the injury. Both before and after

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

the surgeries, plaintiff was able to work. From 1992 to 2003, he worked as a janitor, laborer, and material handler earning a fairly steady yearly income. R. 166. Starting in 2003, his income dropped off. During this latter period, he earned some income running a window cleaning business.

On December 27, 2012, plaintiff filed for Title II disability benefits, alleging an onset date of December 20, 2012. In addition to his neck and back and shoulder problems, plaintiff also alleged that he suffered from COPD, anxiety, depression, stomach problems, and arthritis. R. 67. However, because this appeal only focuses on the orthopedic problems, the Court will not summarize the evidence relating to these other conditions.

The primary evidence in this case comes from plaintiff's treatment with Dr. Howard Weiss, an anesthesiologist specializing in pain management. Plaintiff first saw Dr. Weiss on February 1, 2012 and continued seeing him up until at least May 22, 2015. Plaintiff saw him approximately 15 times over a 26-month period. Dr. Weiss conducted physical examinations, ordered tests (including an MRI, chest x-ray, and EMG), prescribed a number of pain medications, administered epidural injections, and then, when the injections were not working, recommended that plaintiff have a pain pump installed. Plaintiff declined because, as he explained at the hearing, he was worried that it would cause an infection and that it also might malfunction by delivering the pain medication all at once. R. 46-47.

On February 7, 2012, an MRI was taken. The report concludes as follows: "Mild degenerative changes in the cervical spine. Satisfactory cervical spine fusion." R. 274. About three years later, on March 10, 2015, another MRI was taken. This report states that plaintiff had "mild degenerative changes without focal disc herniation or cord abnormality." R. 363. In addition to the MRIs, an EMG nerve conduction study was performed on February 24, 2015.

This report states as follows: "Normal study. No electrodiagnostic evidence of radiculopathy, plexopathy, or mononeuropathy was seen." R. 369. On June 1, 2013, a consultative examination was performed by Dr. Muhammad Rafiq. His conclusions are summarized below.

An administrative hearing was held on September 29, 2015. Plaintiff testified about his work history, medications, and daily activities.

On November 25, 2015, the ALJ issued a written decision finding that plaintiff was not disabled. The ALJ found that plaintiff had "mild degenerative disc disease of the cervical spine, status post fusion," and that his condition, as well as several others, were severe impairments at Step Two. The ALJ found that plaintiff had the residual functional capacity ("RFC") to do light work subject to a few limitations.

The ALJ's RFC discussion mostly addressed the finding that plaintiff was not credible. The ALJ began with an overview of the medical history. Interspersed within this narrative were comments suggesting that the ALJ believed that the objective evidence only indicated mild problems. The ALJ explained as follows:

> Nevertheless, despite these conditions, a review of the overall record does not support the extent to which the claimant alleges he is limited. For example, at various treatment visits, the claimant was noted to be grossly intact after neurological examination (8F/2, 6, 12F/5). Moreover, an EMG performed was also within normal limits with no evidence of radiculopathy or neuropathy, and as noted, imaging of the claimant showed only mild degenerative changes (12F/7, 15). Recent examination also revealed normal motor strength and reflexes in the bilateral upper extremities (12F/7).
>
> The undersigned also notes that despite reports of severe pain, the claimant was often noted to be in no acute distress (2F/5, 6F/8, 10F/2). Further, one of the claimant's treating providers noted that he "did not detect a clear suggestion as to the etiology of his pain on exam" (12F/7). The claimant also declined use of a pain pump after the claimant was offered one due to his pain reports (10F/5). This evidence suggests that the claimant's pain may not be as severe as alleged. Moreover, the claimant reported improvement following his treatment and noted that he was generally feeling well (7F/6, 8, 10F/8).

3

R. 24.

The ALJ also concluded that Dr. Rafiq's report supported the above conclusions. The ALJ stated as follows:

> The claimant also attended a consultative examination in June of 2013, where he reported the above noted symptoms (5F/1). However, at the examination, the claimant was able to get on and off the exam table with no difficulty, and although he displayed an antalgic gait, he was noted to be able to walk greater than 50 feet without support. Moreover, his grip strength was noted to be normal in both hands, and he was able to grasp and manipulate objects without difficulty, was able to fully extend his hands, and he displayed normal range of motion in his shoulders, elbows, wrists, hips, knees, ankles, and cervical spine was normal. Further, although the claimant displayed positive straight leg raise testing and decreased lumbar range of motion, the claimant maintained 5/5 muscle strength in all limbs, sensory examination was normal, and the claimant displayed deep tendon reflexes that were present, equal and symmetric (5F/3).

R. 24-25.

The ALJ next considered plaintiff's activities, and found that they also did not support his allegations of severe pain. The ALJ stated as follows:

> [T]he record documents that the claimant has no problems with personal care and remained capable of preparing meals, driving, shopping in stores, cleaning and performing minor repairs, and managing his finances. Moreover, the record indicates that the claimant spent time taking care of his grandchildren (13F/1, Hearing Testimony). This evidence suggests a greater functional ability than alleged.

R. 25.

In the final portion of the credibility analysis, the ALJ discussed five alleged inconsistencies. First, plaintiff inconsistently stated in function reports that he experienced dizziness, but then "often" denied dizziness to his doctors. *Id.* Second, plaintiff "testified that he only watched his grandchildren a couple hours at a time on only a few days per week," but later testified that "he watched one child all day while his wife and daughter were at work." *Id.* Third, plaintiff testified that he had two herniated discs in his back, but he had "not undergone imaging

4

testing" for these conditions, and reported two herniated discs in his neck, but the imaging reports "revealed no herniated discs." *Id.* at 25-26. Fourth, plaintiff had been able to work full-time for many years after the forklift accident and had not presented any "significant evidence" that his condition had worsened since then. *Id.* at 26. Fifth, the ALJ noted that plaintiff had minimal earnings between 2008 and 2011, as compared to his pre-2008 earnings, and that this drop-off suggested that "his impairments may not be the sole reason for his inability to sustain full-time competitive employment as other reasons, unrelated to any medical condition, may account for his current lack of employment." *Id.*

As for the medical opinions, the ALJ did not call a medical expert at the hearing. The ALJ gave only partial weight to the opinions of the State agency physicians, rejecting their conclusions that plaintiff could perform medium work because the ALJ believed that plaintiff's "decreased lumbar range of motion and reports of pain" were more consistent with light work.

**ARGUMENT**

As noted above, plaintiff's raises two main arguments for remand. The Court begins with the second one because it can be addressed quickly. After the ALJ issued her decision, plaintiff's counsel contacted Dr. Weiss and persuaded him to complete a two-page medical form on which he opined that plaintiff had various limitations that, if accepted, would prevent plaintiff from working full-time (*e.g.* he would miss 5 days or more a month, would be off-task more than 30% of the day, and could only sit or stand for an hour). Ex. 14F. Plaintiff submitted the letter to the Appeals Council, which then denied the appeal in a short boilerplate ruling.

In its response brief, the Government argues that plaintiff must show good cause for not submitting this opinion *before* the ALJ issued her ruling. In his reply brief, plaintiff simply ignores this argument, neither contesting the Government's assertion that there was a good cause

5

requirement nor providing any explanation for the belated submission of Dr. Weiss's opinion. Accordingly, this argument is waived. *See Baker v. Colvin*, 2015 WL 719604, *4 (N.D. Ill. Feb.18, 2015) ("undeveloped" arguments, which rely on "passing references" to legal rules "without providing any substantive support," are deemed waived). It is unfortunate that this opinion was not available at the time of the ALJ's original ruling because plaintiff's first argument, evaluated below, is basically that Dr. Weiss revealed his opinion through his actions— namely, his treatment of plaintiff over a two-year period was consistent with a belief that plaintiff's pain allegations were credible.

The Court now turns to this first argument, which is that the ALJ erred in finding plaintiff not credible. Most of plaintiff's argument focuses on the ALJ's narrative summary where the ALJ discussed the objective medical evidence. In reviewing plaintiff's briefs, the Court discerns two separate substantive complaints being raised by plaintiff. The first is that ALJ wrongly concluded that plaintiff's neck and back problems were mild. The second is that the ALJ failed to give any weight to the plaintiff's treatment history.

The Court is not persuaded by the first argument. Although the ALJ never explicitly stated in one take-away sentence that plaintiff's orthopedic problems were mild, both sides seem to agree that this conclusion was implicit in the narrative. The issue is whether the ALJ relied on substantial evidence or instead unfairly cherrypicked the evidence or improperly played doctor.

Plaintiff's raises several short arguments attacking discrete portions of the ALJ's analysis, but these criticisms are either unsubstantiated or amount to attempts to re-argue the evidence and thereby to have this Court re-weigh that evidence and reach a different conclusion. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (the reviewing court should not reconsider facts or evidence or make independent credibility determinations). For example, plaintiff

complains that the ALJ understated his condition by calling it "simply mild degeneration" Dkt. #9 at 7-8. But the MRI reports described plaintiff's degenerative disc disease as being "mild."[2] Given this evidence, the Court cannot conclude that the ALJ was unjustified in her description. In a related criticism, plaintiff complains that the ALJ did not mention that plaintiff was also diagnosed with "failed back syndrome." As a preliminary point, the records refer consistently to "failed *neck* syndrome." This point aside, the Court is not persuaded that the omission of this additional description or diagnosis was material given that the ALJ acknowledged that plaintiff had neck surgeries, and that he continued to experience pain many years thereafter. Plaintiff does not offer any explanation, nor cite to any medical authority, to show why this one additional diagnosis was significant over and above the other evidence in the record. For these reasons, the Court finds that this omission was harmless error. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.").

    Plaintiff acknowledges, as he must, that there was a number of pieces of evidence suggesting that his problems were mild, including several normal examination findings, observations from the consultative examination, the EMG report, and the MRIs. Plaintiff responds with the following statement: "However, [this evidence] does not negate that plaintiff had *feelings* of numbness and chronic neck pain." Dkt. #9 at 6 (emphasis added). But this counter-argument confuses two separate inquiries. Plaintiff is attacking the ALJ's discussion of the *objective* evidence by appealing to his *subjective* allegations. But the whole point of focusing on the former is to shed light on the latter. Of course, as both sides realize, an ALJ may not rely on the objective evidence as the "sole" basis for finding a plaintiff not credible. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an administrative law judge may not deny benefits on the

---

[2] In plaintiff's opening brief, when summarizing this evidence, plaintiff also used the word "mild." Dkt. #9 at 3.

sole ground that there is no diagnostic evidence of pain"); *see generally Promega Corp. v. Applied Biosystems, LLC*, No. 13 C 2333, 2013 U.S. Dist. LEXIS 154690, at *31 (N.D. Ill., Apr. 4, 2013) (the word "solely" is key). However, here, the ALJ did not rely solely on the objective evidence. Instead, the ALJ also relied on plaintiff's activities and allegedly inconsistent statements.

Perhaps plaintiff's strongest criticism of the ALJ's narrative discussion of the medical history is directed at the following statement: "Further, one of the claimant's treating providers noted that he 'did not detect a clear suggestion as to the etiology of his pain on exam' (12F/7)." R. 24. (The treating provider being referred to is Dr. Weiss.) According to plaintiff, the ALJ took this quotation out of context and thereby altered its meaning. Plaintiff claims that Dr. Weiss was merely referring to plaintiff's recent "clavicle injury" and not to *all* of his pain. Plaintiff seems to be suggesting that the ALJ made something closer to a factual error in taking this quotation out of context, which if true would be a more solid basis for a remand. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (an ALJ may not base a credibility determination on "errors of fact or logic"). But the Court is not persuaded that the ALJ made an error. In reading the statement in context—and, by the way, the quotation was accurately transcribed—the Court does not find evidence to support plaintiff's assertion that the reference to no etiology related solely to the clavicle injury. At the same time, as will be discussed below, it is also unclear that Dr. Weiss was trying to convey doubts about plaintiff's pain allegations.[3]

---

[3] Set forth below is the larger passage from which the quotation was taken:

**Assessments**

1. Cervical radiculitis – 723.4 (Primary)
2. Failed Neck Syndrome – 722. 81
3. Low back pain – 724.2
4. Lumbar radiculitis – 724.4
5. LONG-TERM USE MEDS NEC – V58.69

Plaintiff's second major complaint about the ALJ's discussion of the objective evidence is more persuasive. Plaintiff argues that the ALJ overlooked, or strongly downplayed, the extensive treatment plaintiff received from Dr. Weiss. Plaintiff notes that Dr. Weiss prescribed "a cocktail of strong narcotics," and administered "numerous" epidural objections. Dkt. #13 at 1. Plaintiff also asserts that the ALJ "conspicuously overlooked that Dr. Weiss made statements about the efficacy of plaintiff's injections" and "even declared that plaintiff was 'marginally holding his own' from a pain standpoint." Dkt. #9 at 8. Although the numerous injections worked somewhat, their effectiveness faded over time according to plaintiff. Dr. Weiss then proposed a pain pump, which plaintiff declined because he was concerned about several alleged risks. In short, in Social Security disability vernacular, plaintiff states that he was "non-responsive to multiple treatment modalities." Dkt. #13 at 1. Plaintiff summarizes his argument as follows: "If Dr. Weiss truly believed [that] plaintiff had absolutely no etiology whatsoever for his pain, then he would not be prescribing multiple strong pain [medications] as well as discussing a pain pump with plaintiff." *Id.*

In considering this argument, the Court notes that a claimant's treatment history is one of several factors that ALJs must consider in assessing credibility. SSR 96-7p provides the following explanation:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of

---

This patient's testing thus far is just consistent with his known COPD. We have ruled out problems such as a lung malignancy that could present like his pain. EMG/NCV was WNL. *I did not detect a clear suggestion as to the etiology of his pain on exam.* We will have him go ahead with an MRI of the C-spine and compare it to the one from 2013.

R. 361 (emphasis added).

9

> treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

The Seventh Circuit has repeatedly emphasized the importance of considering the claimant's treatment history when evaluating pain allegations. *See, e.g., Heeman v. Astrue*, 414 Fed. Appx. 864, 868 (7th Cir. 2011) ("As we commented in *Carradine*, what is significant here (as there) is the improbability that Heeman would have undergone all the procedures he did, including the trial insertion of a spinal stimulator, his physical therapy, and his heavy medications, just to create the impression that he was experiencing pain."); *Goble v. Astrue*, 385 Fed. Appx. 588, 591 (7th Cir. 2010) ("We have deemed it improbable that a claimant would undergo pain-treatment procedures such as heavy doses of strong drugs in order to increase chances of obtaining disability benefits or that doctors would prescribe these treatments if they thought she were faking."); *see also Israel v. Colvin*, 840 F.3d 432, 434 (7th Cir. 2016) ("Under the care of various doctors and specialists, Israel tried physical therapy, transcutaneous electric nerve stimulation (also called "TENS"), a dorsal column stimulator, epidural injections, narcotic pain medications including Methadone and morphine, lidocaine patches to block nerves from sending pain signals, a muscle relaxer, an antidepressant known to help with chronic pain, and drugs used for nerve pain.").

Here, the ALJ did not analyze this treatment history in any meaningful way. The ALJ's discussion of this issue was contained in the following sentence: "For his pain, the claimant was prescribed medication, such as Flexeril and Norco, and he also underwent injections[.]" R. 24. But this description glosses over the details about the frequency of treatment, as summarized above. For example, it significantly understates the amount of medications that plaintiff was taking. According to Dr. Weiss's treatment notes, in May 2015, plaintiff was taking Norco,

OxyContin, MS Contin, Cymbalta, Flexeril, Neurotnin, and Relafen, among other medications.[4] R. 355. Similarly, the ALJ's description does not acknowledge that plaintiff repeatedly received injections over the two-year period and that they were becoming less and less effective (at least according to plaintiff's subjective reports) and that Dr. Weiss made statements suggesting that he believed those reports. Viewed from a broader perspective, the ALJ's decision ultimately rests on the premise that Dr. Weiss, plaintiff's treating physician who saw him 15 times, had misdiagnosed plaintiff and overprescribed medications and other treatments, all because Dr. Weiss failed to see that plaintiff was exaggerating his pain.

As for Dr. Weiss's recommendation that plaintiff try a pain pump, the ALJ noted this fact as a reason for doubting plaintiff's allegations. *See* R. 24 ("The claimant also declined use of a pain pump after the claimant was offered one due to his pain reports[.]"). But the ALJ's brief statement failed to fully consider this issue. For one thing, the ALJ failed to acknowledge that plaintiff testified that he had concerns about risks involved with this procedure. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (an ALJ should explore possible explanations for why treatments were not pursued). For another thing, there was no independent medical assessment of the risks and potential benefits of such a procedure to enable a fair evaluation of the plaintiff's refusal to undergo this treatment. Moreover, the mere fact that a pain pump was being considered provides indirect support for the view that Dr. Weiss believed plaintiff's pain allegations.

In sum, the Court finds that the ALJ's decision was incomplete by failing to address the issue of treatment, and that failure is enough to justify a remand. *Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (an ALJ may not ignore a line of evidence contrary to his conclusion).

---

[4] Plaintiff was also approved for the Illinois Medical Cannabis Pilot Program on October 17, 2014, although it is not clear whether he was also using cannabis to help with the pain. R. 334.

In remanding this case, the Court acknowledges that the ALJ did not simply rely on the mild objective evidence, but also cited to plaintiff's daily activities and to several alleged inconsistencies. These rationales, some of which plaintiff has not even challenged, provide additional support for the ALJ's credibility finding and make the decision to remand a close call. But these additional rationales cannot fix the problem that the ALJ ignored an important line of evidence that reasonably bolsters plaintiffs credibility. On remand, the ALJ should call an impartial medical expert to evaluate the nature of plaintiff's treatments and how they support (or perhaps do not support) plaintiff's allegations and to evaluate Dr. Weiss's notes and his opinion, which can now be considered on remand along with the rest of the evidence.

This opinion in no way holds that plaintiff is entitled to benefits on remand.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: August 27, 2018　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge